ALLEN RO'NAY COTTON, APPELLANT, V. JOHN STEELE AND DENNIS CARLSON, NEBRASKA STATE BAR ASSOCIATION, IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES, APPELLEES.

587 N.W.2d 693

Filed January 8, 1999.   No. S-97-735.

Allen Ro'nay Cotton, pro se.

Neal E. Stenberg and Maren Lynn Chaloupka, of Harding, Shultz & Downs, for appellees.

WRIGHT, CONNOLLY, GERRARD, STEPHAN, and MCCORMACK, JJ.

PER CURIAM.

Allen Ro'nay Cotton appeals from an order of the district court for Douglas County dismissing his petition against John Steele and Dennis Carlson, who are sued both individually and in their respective capacities as Assistant Counsel for Discipline and Counsel for Discipline of the Nebraska State Bar Association (NSBA). We affirm, based upon our determination that Cotton lacks standing to assert a claim against Steele and Carlson based upon allegations that they improperly disposed of a disciplinary complaint which Cotton filed against a Nebraska attorney.

## FACTUAL AND PROCEDURAL BACKGROUND

In his petition, Cotton alleged that in December 1996 he filed a complaint with the NSBA against an unidentified attorney who, according to Cotton, violated a copyright law. Cotton

alleged that on February 5, 1997, Steele dismissed his complaint without supplying a reason and without instructing the attorney to respond to the complaint. Cotton asserted that Steele refuses to investigate complaints submitted by pro se litigants, Steele always resolves complaints in favor of the attorney, and Carlson is aware of Steele's "bias [sic] opinions." Cotton also alleged that on February 11, he wrote a letter to Carlson, informing him of Steele's actions and requesting that a proper investigation be conducted. Cotton further alleged that Carlson never responded to this letter and that Carlson refuses to enforce the "NSBA rules."

In his petition, Cotton alleged a violation of 42 U.S.C. § 1983 (Supp. II 1996) and §§ 1985 and 1986 (1994), based on malpractice, abuse of authority, inadequate investigation, inadequate training, and failure to prosecute, in violation of the Due Process and Equal Protection Clauses of the U.S. Constitution. In addition, Cotton asserted that Steele and Carlson were negligent. Cotton requested that the district court issue an injunction ordering Steele to follow the rules and regulations of the NSBA and a declaratory judgment stating that the "mental abuse" Cotton suffered violated his rights under the 14th Amendment and state law. Cotton also requested $50,000 in compensatory damages from Steele and Carlson for "psychological damges [sic] including personal humiliation and mental anguish sustained throughout this entire ordeal."

On April 28, 1997, Steele and Carlson filed a demurrer to Cotton's petition on the following grounds: (1) The petition failed to state facts sufficient to constitute a cause of action, (2) the petition failed to adequately allege subject matter jurisdiction, (3) Steele and Carlson were entitled to absolute immunity from suit for any claims alleged in the petition, (4) Steele and Carlson were immune from suit for damages in their official capacities by virtue of the 11th Amendment to the U.S. Constitution, (5) Cotton lacked standing, and (6) the petition failed to adequately allege proximate causation and damages. On June 13, the district court sustained the demurrer without leave to amend and dismissed the petition. Cotton perfected this appeal, and we subsequently granted Steele and Carlson's petition to bypass.

## ASSIGNMENTS OF ERROR

Cotton asserts, summarized, that the district court erred in sustaining Steele and Carlson's demurrer and dismissing his petition.

## STANDARD OF REVIEW

When reviewing an order sustaining a demurrer, an appellate court accepts the truth of the facts which are well pled, together with the proper and reasonable inferences of law and fact which may be drawn therefrom, but does not accept as true the conclusions of the pleader. *Syracuse Rur. Fire Dist. v. Pletan*, 254 Neb. 393, 577 N.W.2d 527 (1998); *Hoiengs v. County of Adams*, 254 Neb. 64, 574 N.W.2d 498 (1998).

Standing is a jurisdictional component of a party's case because only a party who has standing may invoke the jurisdiction of a court; determination of a jurisdictional issue which does not involve a factual dispute is a matter of law which requires an appellate court to reach an independent conclusion. *Hawkes v. Lewis*, 255 Neb. 447, 586 N.W.2d 430 (1998); *Rice v. Adam*, 254 Neb. 219, 575 N.W.2d 399 (1998).

## ANALYSIS

We initially address the jurisdictional question of whether Cotton has standing to bring this action. Standing relates to a court's power, that is, jurisdiction, to address the issues presented and serves to identify those disputes which are appropriately resolved through the judicial process. *Hawkes v. Lewis, supra*; *Ponderosa Ridge LLC v. Banner County*, 250 Neb. 944, 554 N.W.2d 151 (1996). As an aspect of jurisdiction and justiciability, "standing" requires that a litigant have such a personal stake in the outcome of a controversy as to warrant invocation of a court's jurisdiction and justify the exercise of the court's remedial powers on the litigant's behalf. *Hawkes v. Lewis, supra*; *State v. Cody*, 248 Neb. 683, 539 N.W.2d 18 (1995). Under the doctrine of standing, a court may decline to determine the merits of a legal claim because the party " 'advancing it is not properly situated to be entitled to its judicial determination. . . .' " *State v. Baltimore*, 242 Neb. 562, 568, 495 N.W.2d 921, 926 (1993), quoting 13 Charles A. Wright et al., Federal Practice and Procedure: Standing § 3531 (2d ed. 1984).

In this case, we must determine whether one who files a disciplinary complaint against a Nebraska lawyer has standing to bring an action for legal and equitable relief based upon allegations that the complaint was not properly handled by the office of the Counsel for Discipline. As a starting point in this analysis, we summarize the system by which Nebraska attorneys may be disciplined in response to a citizen complaint.

This court has inherent authority to regulate the conduct of attorneys admitted to the practice of law in the State of Nebraska. *State ex rel. NSBA v. Barnett*, 248 Neb. 601, 537 N.W.2d 633 (1995); *In re Integration of Nebraska State Bar Ass'n*, 133 Neb. 283, 275 N.W. 265 (1937). Pursuant to that authority, we have promulgated disciplinary rules which govern the processing and disposition of complaints charging Nebraska lawyers with violations of the Code of Professional Responsibility. See *State ex rel. NSBA v. Barnett, supra.* The preface to the disciplinary rules states: "The discipline of attorneys is for the protection of the public, the profession, and the administration of justice." We have written that the purpose of an attorney disciplinary proceeding is not so much to punish the attorney as it is to determine whether in the public interest an attorney should be permitted to practice. *State ex rel. NSBA v. Barnett, supra*; *State ex rel. Nebraska State Bar Assn. v. Fitzgerald*, 165 Neb. 212, 85 N.W.2d 323 (1957).

The disciplinary rules require the NSBA to employ a Counsel for Discipline, whose appointment and tenure are subject to the approval of this court. Neb. Ct. R. of Discipline 8(A) (rev. 1996). The Counsel for Discipline and his or her staff possess specifically enumerated powers and duties which include the initial screening of complaints of attorney misconduct to determine whether there is sufficient evidence to warrant further processing of the complaint under the procedures established by the disciplinary rules. Neb. Ct. R. of Discipline 8(B)(1), (3), and (4). In addition, the Counsel for Discipline is responsible for prosecution of disciplinary cases filed in this court. Neb. Ct. R. of Discipline 10(Q) (rev. 1996). By rule, the Counsel for Discipline and his or her representatives are granted immunity from suit "for any conduct in the course of their official duties"

under the disciplinary rules. Neb. Ct. R. of Discipline 22(B) (rev. 1996).

Any citizen wishing to initiate a disciplinary proceeding against a Nebraska attorney must file a written complaint with the Counsel for Discipline, alleging conduct on the part of the attorney which, if true, would constitute a violation of the attorney's oath or certain provisions of the Code of Professional Responsibility. See Neb. Ct. R. of Discipline 9(A) (rev. 1996). When a complaint is filed, the Counsel for Discipline is required to make an initial determination of whether the allegations warrant formal investigation. In making this determination, the Counsel for Discipline may make such preliminary inquiry regarding the underlying facts as deemed appropriate and must resolve all doubts in favor of an investigation. If the Counsel for Discipline determines, on the basis of this preliminary review, that the allegations are without merit or, if true, would not constitute grounds for discipline, he or she may decline to conduct an investigation but must give the complainant a written explanation of the reasons for doing so. Neb. Ct. R. of Discipline 9(C).

If the Counsel for Discipline determines that investigation is warranted, the attorney against whom the complaint is directed must be given notice and a request to submit a written response to the complaint. Neb. Ct. R. of Discipline 9(D) and (E). After conducting an investigation, if the Counsel for Discipline determines that there are reasonable grounds for discipline, he or she must prepare and file charges with the appropriate committee on inquiry appointed by this court. Neb. Ct. R. of Discipline 9(G). On the other hand, if the Counsel for Discipline concludes on the basis of an investigation that reasonable grounds for discipline do not exist, he or she may dismiss the complaint upon providing the complainant with a written explanation of the reasons for doing so and notifying the complainant of his or her right to appeal the dismissal of the complaint to the appropriate committee on inquiry. Neb. Ct. R. of Discipline 9(F) and 14(A) (rev. 1996).

When disciplinary charges are filed with a committee on inquiry, it must either (1) dismiss the charges based upon a

determination that if true, they would not constitute grounds for discipline; (2) issue a reprimand to the attorney, based upon a determination that the charges, if true, would constitute grounds for discipline but no public interest would be served by the institution of a formal charge; or (3) conduct a nonadversary, investigative hearing to determine if there are sufficient grounds to warrant that a formal charge be filed with the Disciplinary Review Board. Neb. Ct. R. of Discipline 9(H). The Counsel for Discipline is required to notify the complainant of charges filed with the committee on inquiry, the findings of the committee, and the complainant's rights of appeal to the Disciplinary Review Board. If the committee on inquiry dismisses the charges without conducting a hearing, either the Counsel for Discipline or the complainant may appeal to the Disciplinary Review Board; however, if the charges are dismissed following a hearing, only the Counsel for Discipline may appeal. Neb. Ct. R. of Discipline 14(B) and (C). When a committee on inquiry issues a reprimand, only the Counsel for Discipline and the attorney have a right to appeal. Neb. Ct. R. of Discipline 14(D). A formal charge filed with the Disciplinary Review Board must be in the name of the State of Nebraska on the relation of the NSBA. Neb. Ct. R. of Discipline 9(H)(3)(i). The Disciplinary Review Board is empowered but not required to conduct an additional hearing and may either dismiss the formal charge, return it to the committee on inquiry with directions, issue a reprimand, or file the formal charge with this court. Neb. Ct. R. of Discipline 9(I) through (L). No formal charge may be docketed in this court until it has been considered by a committee on inquiry and the Disciplinary Review Board. Neb. Ct. R. of Discipline 9(M).

Disciplinary proceedings filed in this court "shall be considered civil in their nature and for the purpose of protecting the public and the good name" of attorneys admitted to practice in Nebraska. Neb. Ct. R. of Discipline 10(A). Such proceedings may be prosecuted in the name of the State of Nebraska on the relation of the NSBA with or without leave of court, or on the relation of a private person after obtaining leave of court. "Leave may be granted to a private person to file proceedings as relator only upon a prima facie showing of probable grounds for

disciplinary proceedings, and only after the matter has been submitted to the appropriate Committee on Inquiry, and considered by the Disciplinary Review Board." Neb. Ct. R. of Discipline 10(B).

Under our disciplinary rules, "[n]either unwillingness nor neglect of the Complainant to sign a complaint or to assist in the prosecution of Charges, nor settlement, compromise or restitution, shall, in itself, justify termination of any disciplinary proceedings." Neb. Ct. R. of Discipline 19 (rev. 1996). In *State ex rel. NSBA v. Kirshen*, 232 Neb. 445, 470, 441 N.W.2d 161, 176 (1989), we held that a document signed by the personal representative of an estate releasing her attorney from certain liability with regard to his representation of the estate was not determinative of disciplinary charges arising from such representation, because the personal representative "had no standing to maintain a disciplinary action against respondent or any authority to effectively discharge a complaint."

Likewise, similarity of the substance of a disciplinary action to the material allegations of pending civil or criminal litigation does not in itself prevent or delay such disciplinary proceedings, and disposition of criminal charges or civil litigation in favor of an attorney does not in itself justify the termination of disciplinary proceedings predicated upon the same or substantially the same material allegations. Neb. Ct. R. of Discipline 20 (rev. 1996). *State ex rel. NSBA v. Roubicek*, 225 Neb. 509, 406 N.W.2d 644 (1987).

The specific standing issue in this case is one of first impression in this state. However, the question of standing under similar circumstances was addressed in *Doyle v. Oklahoma Bar Assn.*, 998 F.2d 1559 (10th Cir. 1993). Doyle, an Australian barrister, brought an action under 42 U.S.C. § 1983 (1988) against the Oklahoma Bar Association and several of its employees, including its general counsel and assistant general counsel, after becoming dissatisfied with the manner in which bar counsel and members of the Oklahoma Professional Responsibility Commission handled a grievance which he had filed against his ex-wife's lawyer. Doyle alleged that his civil rights were violated by the assistant general counsel's decision that his grievance lacked merit and therefore did not warrant investiga-

tion and by the subsequent failure of bar officials to respond favorably to his attempts to obtain a reversal of this decision. Doyle's allegations included claims that he was discriminated against because he was not a U.S. citizen and that the actions of bar officials infected the integrity of the investigatory process and deprived him of fairness and procedural safeguards required by due process. Doyle alleged that because of the actions of bar officials, he was unsuccessful in his state court litigation, suffered emotional distress, and incurred various expenses and loss of income. In concluding that Doyle lacked standing to assert these claims, the court noted that the Oklahoma attorney discipline system was prosecutorial in nature, with bar officials having discretion to investigate complaints and either dismiss or file disciplinary charges. Drawing an analogy to a criminal prosecution, as to which the U.S. Supreme Court in *Linda R. S. v. Richard D.*, 410 U.S. 614, 619, 93 S. Ct. 1146, 35 L. Ed. 2d 536 (1973), stated that "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another," the *Doyle* court concluded: "The fact is that the only one who stands to suffer direct injury in a disciplinary proceeding is the lawyer involved. Doyle has no more standing to insert himself substantively into a license-based discipline system than he has to compel the *issuance* of a license." (Emphasis in original.) 998 F.2d at 1566-67.

The same rationale was applied in *Fitzgerald v. State*, No. CIV. 96-2207-PHX-SMM, 1997 WL 579193 (D. Ariz. July 9, 1997) (unpublished opinion), *aff'd* 133 F.3d 926 (9th Cir. 1997). In that case, the plaintiff contended that his federal civil rights were violated by a delay on the part of state bar officials in processing a disciplinary complaint against a lawyer, which allegedly prejudiced civil actions for damages which he had filed against the lawyer. Fitzgerald also claimed that bar officials violated Arizona Supreme Court rules by failing to immediately provide him with a copy of the lawyer's response to his complaint and failing to immediately inform him of the findings of the disciplinary hearing committee. In granting the bar officials' motion to dismiss, the court followed the rationale of *Doyle, supra*, and held that Fitzgerald had no standing to assert

a claim based upon alleged procedural violations in an attorney discipline proceeding.

Two cases involving the power of federal courts to impose discipline upon attorneys are also pertinent to our analysis of standing. In *Starr v. Mandanici*, 152 F.3d 741 (8th Cir. 1998), an attorney appealed from an order denying his ethics grievance against a special prosecutor. Relying on its holding in *Mattice v. Meyer*, 353 F.2d 316 (8th Cir. 1965), that informants of ethics grievances lack standing to commence a formal action in federal district court, the court concluded that "Mandanici's role begins and ends with the filing of his ethics grievance" and, thus, that he lacked standing to seek formal judicial adjudication of the grievance. *Starr v. Mandanici*, 152 F.3d at 748. Also relying on *Mattice*, the court in *Ramos Colon v. U.S. Atty. for D. Puerto Rico*, 576 F.2d 1 (1st Cir. 1978), held that an individual who filed a disciplinary complaint against a federal prosecutor based upon allegations that the prosecutor had filed criminal charges against him in bad faith lacked standing to challenge the court's decision not to impose disciplinary sanctions against the prosecutor.

We have found no authority holding that one who files a disciplinary complaint against an attorney has standing to bring an action against NSBA officials that challenges their processing or disposition of the complaint. While our disciplinary rules provide that a complainant shall receive notice and an opportunity to be heard at various stages of the disciplinary process, they do not constitute a means by which the complainant may seek personal redress against the attorney whose misconduct is alleged. The basic issues in a disciplinary proceeding against an attorney are whether discipline should be imposed and, if so, the type of discipline appropriate under the circumstances. *State ex rel. NSBA v. Barnett*, 248 Neb. 601, 537 N.W.2d 633 (1995); *State ex rel. NSBA v. Schmeling*, 247 Neb. 735, 529 N.W.2d 799 (1995). Thus, when a citizen files a disciplinary complaint, there are two possible outcomes: either some form of discipline is assessed against the attorney or no discipline is assessed. Neither result confers any legally cognizable benefit or causes any legally cognizable injury to the complainant who initiated

the proceeding. Stated another way, one who files a disciplinary complaint against an attorney has no personal stake in the outcome of the proceeding other than whatever personal satisfaction or disappointment he or she may derive therefrom. The disposition of the disciplinary action does not deprive the complainant of any civil remedy he or she may have against the attorney who was the subject of the complaint.

Our system for disciplining attorneys exists for the protection of the public and not as a means of redress for one claiming to have been personally wronged by an attorney. Thus, any dereliction of duty on the part of the Counsel for Discipline or his or her staff that results in the failure to discipline an attorney who should have been disciplined poses a risk of injury to the general public, not to a particular individual. Generally, sufficient standing as a party in litigation may not be based merely on a general interest common to all members of the public. *Rexroad, Inc. v. S.I.D. No. 66*, 222 Neb. 618, 386 N.W.2d 433 (1986). We therefore conclude that Cotton did not have standing to assert a claim against Steele and Carlson based upon their alleged mishandling of his disciplinary complaint and, accordingly, that the district court did not err in sustaining the demurrer and dismissing the action.

Our determination that Cotton lacks standing to maintain a civil action against the Counsel for Discipline or members of his staff does not mean that such persons are not required to carry out their duties in accordance with all applicable rules or that they are not accountable for any proven failure to do so. This court is responsible for seeing that the disciplinary rules are fairly and correctly administered, both for the benefit of the general public whose interest they protect and for the benefit of the attorneys whose conduct they regulate. Any violation of or departure from the rules by those responsible for their administration and implementation will result in appropriate corrective action by this court.

AFFIRMED.

WHITE, C.J., not participating.