STATE OF NEBRASKA EX REL. NEBRASKA STATE BAR ASSOCIATION, RELATOR, V. W. MARK JENSEN, RESPONDENT.

619 N.W.2d 840

Filed December 8, 2000.   No. S-99-1059.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

PER CURIAM.

This is an original action brought by the relator, the Nebraska State Bar Association, seeking assessment of discipline against the respondent, W. Mark Jensen, an attorney who was admitted to practice law in the State of Nebraska on September 24, 1996. On August 24, 1999, Jensen submitted an affidavit to the chairperson of the Committee on Inquiry of the Second Disciplinary District, requesting the entry of an order temporarily suspending his license to practice law in Nebraska because of his alcoholism. Based upon Jensen's affidavit, the Committee on Inquiry of the Second Disciplinary District filed an application for temporary suspension of Jensen's license to practice law, which was granted by this court on September 15.

On June 21, 2000, the Committee on Inquiry of the Second Disciplinary District filed formal charges against Jensen with this court. As specified below, each of the formal charges alleged violations of one or more of the following provisions of the Code of Professional Responsibility, Canons 1, 6, and 9:

DR 1-102 Misconduct.

(A) A lawyer shall not:

(1) Violate a Disciplinary Rule.

. . . .

DR 6-101 Failing to Act Competently.

(A) A lawyer shall not:

. . . .

(3) Neglect a legal matter entrusted to him or her.

. . . .

DR 9-102 Preserving Identity of Funds and Property of a Client.

(A) All funds of clients paid to a lawyer or law firm shall be deposited in one or more identifiable bank or savings and loan association accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:

(1) Funds reasonably sufficient to pay account charges may be deposited therein.

(2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.

(B) A lawyer shall:

. . . .

(4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive.

Each of the formal charges also alleged that Jensen had violated his oath of office as an attorney, and several alleged that Jensen had violated Neb. Ct. R. of Discipline 16 (rev. 2000), which provides, inter alia, that when an attorney is suspended from the practice of law, that attorney must notify his or her clients, in writing, of such suspension.

In a stipulation filed June 21, 2000, and signed by Jensen and the Chair of the Committee on Inquiry of the Second Disciplinary District, Jensen admitted most of the allegations contained in the formal charges. On June 28, this court appointed a referee to hear evidence and make a recommendation as to the appropriate sanction to be imposed. A referee hearing was held on September 12 and 19.

On October 20, 2000, the referee filed his report. The parties did not file written exceptions. Neb. Ct. R. of Discipline 10(L) (rev. 2000) provides that when no exceptions are filed, the Nebraska Supreme Court may consider the referee's findings final and conclusive. Based upon the findings in the referee's

report, which we consider to be final and conclusive, we conclude the formal charges are supported by the evidence.

Relator has filed a motion under rule 10(L). The relator's burden of proof in disciplinary proceedings is to establish the allegations set forth in the formal charges against the attorney by clear and convincing evidence. See, *State ex rel. NSBA v. Aupperle*, 256 Neb. 953, 594 N.W.2d 602 (1999); *State ex rel. NSBA v. Johnson*, 256 Neb. 495, 590 N.W.2d 849 (1999). Based on the final and conclusive findings in the referee's report, relator's motion under rule 10(L) is granted, and Jensen is suspended from the practice of law as set forth below.

## FACTS

At all times relevant to these disciplinary proceedings, Jensen has been practicing law in Douglas County, Nebraska. As stated above, on August 24, 1999, Jensen submitted an affidavit requesting that this court enter an order temporarily suspending him from the practice of law, pursuant to Neb. Ct. R. of Discipline 11 (rev. 2000). In the affidavit, Jensen stated that he had been suffering from alcoholism and that he had committed himself to Immanuel Medical Center for depression, morbid thoughts of suicide, memory loss, and ongoing alcohol abuse. Jensen acknowledged in the affidavit that several disciplinary investigations were pending against him, and he requested that the investigations continue during his suspension. Jensen's license to practice law in Nebraska was temporarily suspended by this court on September 15, 1999.

The record shows that on June 8, 1999, Jensen voluntarily placed himself into inpatient treatment for alcoholism at Immanuel Medical Center in Omaha. After approximately 3 weeks of inpatient treatment at Immanuel Medical Center, Jensen was discharged, and he voluntarily entered the Lyle House, a transitional living facility for persons suffering from alcoholism. Jensen was a resident of the Lyle House from July 21 through December 21. Jensen is a member of Alcoholics Anonymous (AA), and he attends three AA meetings a week. Jensen has voluntarily entered into a monitoring contract with the Nebraska Lawyers Assistance Program (NLAP), in which he has agreed to do the following during any period of suspension

of his license to practice law: (1) submit to supervision by a monitor selected by the NLAP, (2) abstain from alcohol, (3) attend at least three AA meetings a week, and (4) submit and pay for random drug screening tests.

## FORMAL CHARGES: COUNT I

Count I alleges violations of Jensen's oath of office as an attorney as well as DR 1-102(A)(1), DR 6-101(A)(3), and DR 9-102(A)(1) and (2).

On June 13, 1998, Judy Stewart hired Jensen to represent her in a chapter 13 bankruptcy proceeding. Stewart paid Jensen a total of $610 and provided him with various documents. Jensen failed to deposit the advanced fees into his attorney trust account.

Stewart had difficulty contacting Jensen. Jensen failed to return Stewart's telephone calls. On November 24, 1998, Stewart wrote to Jensen, terminating his employment and demanding a refund of the advanced costs and fees, as well as the return of her documents. Sometime after November 30, after she had retained new counsel, Stewart recovered her papers from Jensen, and Jensen refunded $550 to Stewart.

Stewart filed a complaint against Jensen with the Office of Counsel for Discipline on November 25, 1998. In the stipulation filed June 21, 2000, Jensen admitted the allegations of count I.

## FORMAL CHARGES: COUNT II

Count II alleges violations of Jensen's oath of office as an attorney as well as DR 1-102(A)(1), DR 6-101(A)(3), and DR 9-102(A).

On December 9, 1998, Sylvia Byrd hired Jensen to represent her in a chapter 7 bankruptcy proceeding. She paid Jensen fees in the amount of $475. Jensen failed to deposit these advanced fees in his attorney trust account.

On April 12, 1999, Byrd filed a complaint against Jensen with the Office of Counsel for Discipline alleging that Jensen neglected her bankruptcy case. Jensen was served with Byrd's complaint on June 24, and on July 1, Jensen filed Byrd's chapter 7 bankruptcy petition. In the stipulation filed June 21, 2000, Jensen admitted the allegations of count II.

## FORMAL CHARGES: COUNT III

Count III alleges violations of Jensen's oath of office as an attorney as well as DR 1-102(A)(1), DR 6-101(A)(3), and DR 9-102(A) and (B)(4).

On January 19, 1999, Adriane Camacho hired Jensen to represent her in an uncontested divorce action. She paid Jensen $283 in fees and costs. Jensen failed to deposit these advanced fees and costs in his attorney trust account.

After repeated difficulties in contacting Jensen, Camacho retained new counsel. On April 28, 1999, Camacho's new counsel wrote Jensen informing him that Jensen no longer represented Camacho and requesting a refund of the advanced fees and costs. On or about June 20, 2000, Jensen refunded $283 to Camacho.

On June 4, 1999, Camacho filed a complaint against Jensen with the Office of Counsel for Discipline. In the stipulation filed June 21, 2000, Jensen admitted that with respect to the allegations of count III, his conduct violated DR 1-102(A)(1), DR 6-101(A)(3), and DR 9-102(A) and (B)(4).

## FORMAL CHARGES: COUNT IV

Count IV alleges violations of Jensen's oath of office as an attorney, rule 16, and DR 1-102(A)(1), DR 6-101(A)(3), and DR 9-102(A) and (B)(4).

On July 28, 1998, Louise Vaccaro hired Jensen to represent her in an uncontested divorce action. Vaccaro paid Jensen $583 as a flat fee. Jensen failed to deposit the fee in his attorney trust account.

In April 1999, Vaccaro directed Jensen to prepare the petition for dissolution of marriage. From May through October 1999, Vacarro was unable to contact Jensen because Jensen did not return her telephone calls. Jensen did not prepare Vaccaro's petition for dissolution of marriage.

On November 10, 1999, Vaccaro filed a complaint with the Office of Counsel for Discipline, complaining that Jensen had neglected her case and failed to refund her fees. On or about November 12, Jensen received a copy of Vaccaro's complaint, together with a letter from the Office of Counsel for Discipline instructing Jensen to respond to the substance of Vaccaro's

complaint within 15 working days. Jensen did not respond as instructed. On January 20, 2000, the Office of Counsel for Discipline sent a second letter to Jensen, again instructing him to respond to Vaccaro's complaint.

On February 1, 2000, Vaccaro wrote to the Office of Counsel for Discipline stating that Jensen had refunded to her the advanced fee around Thanksgiving 1999, but that he had not provided her with an explanation. On March 7, 2000, Jensen filed a response to Vaccaro's complaint, stating that he had refunded the advanced fee to Vaccaro because he did not do the legal work he had been retained to do. In June, Jensen mailed Vaccaro notification that he was no longer practicing law. In the stipulation filed June 21, Jensen admitted that, with respect to the allegations of count IV, his conduct violated DR 1-102(A)(1), DR 6-101(A)(3), and DR 9-102(A) and (B)(4).

## FORMAL CHARGES: COUNT V

Count V alleges violations of Jensen's oath of office as an attorney, rule 16, and DR 1-102(A)(1), DR 6-101(A)(3), and DR 9-102(A) and (B)(4).

On November 18, 1999, Ora Celeste St. Julien filed a complaint against Jensen with the Office of Counsel for Discipline alleging that she had paid Jensen $250 to file a bankruptcy petition for her, but that he had failed to file the petition and that he had not refunded the fees. Jensen received a copy of St. Julien's complaint on or about November 19, together with a letter from the Office of Counsel for Discipline instructing Jensen to respond to St. Julien's complaint within 15 working days. Jensen did not respond. The Office of Counsel for Discipline sent a second letter to Jensen on January 20, 2000, again instructing him to respond to St. Julien's complaint.

On March 7, 2000, Jensen responded to St. Julien's complaint explaining that he understood the payment was for work he had already done on St. Julien's child support modification case. He further stated that if he were mistaken, he would refund the money. Jensen had not deposited these advanced fees in his lawyer trust account. In June, Jensen mailed St. Julien notification that he was no longer practicing law. In his stipulation, Jensen admitted the allegations of count V but affirmatively

alleged that he was hospitalized or in treatment with restricted communication at the time the complaint was mailed to him and, furthermore, that the payment was for work he had completed on a child support modification.

## FORMAL CHARGE: COUNT VI

Count VI alleges violations of Jensen's oath of office as an attorney, rule 16, and DR 1-102(A)(1), DR 6-101(A)(3), and DR 9-102(A) and (B)(4).

On October 21, 1997, on behalf of Ruth Lutz, Jensen filed a petition for appointment of guardian for Joyce J. Randall in the county court for Douglas County, Nebraska. The petition named Jensen as the individual to be appointed as Randall's guardian. Following a hearing, on November 19, the county court appointed Jensen as Randall's guardian. On December 30, the county court issued a show cause order, requiring Jensen to file his acceptance of appointment as guardian on or before January 13, 1998. On January 13, Jensen filed his acceptance.

On January 14, 1998, the county court issued to Jensen letters of guardianship. The letters provided, inter alia, that Jensen was to report annually regarding Randall's condition and the condition of her estate. The letters further provided that Jensen was not to pay himself compensation as Randall's guardian except as approved by order of the court.

Shortly after he was appointed Randall's guardian, Jensen became the designated payee of Randall's periodic Social Security checks. Jensen failed to deposit the checks into his lawyer trust account or into a separate account for Randall's benefit. Instead, Jensen deposited the check into his personal or business account, paid Randall's rent, provided Randall with $60 per month as her needs allowance, and retained the balance as his fee.

Jensen did not have court permission to pay himself these fees. Jensen failed to file an annual report regarding the condition of Randall and her estate. On December 14, 1999, Randall filed a complaint with the Office of Counsel for Discipline alleging that Jensen was her guardian and that he had failed to communicate with her and make timely payments on her behalf. On or about December 15, Jensen received a copy of Randall's

complaint, together with a letter from the Office of Counsel for Discipline instructing Jensen to file a written response to Randall's complaint within 15 working days. Jensen did not respond, and on January 20, 2000, the Office of Counsel for Discipline sent a second letter to Jensen instructing him to respond to Randall's complaint.

On March 7, 2000, Jensen responded to Randall's complaint by explaining that during his recent illness, checks for Randall's rent and for her allowance were not always sent on a regular basis. Jensen stated that Randall's rent account was current. On May 2, the county court accepted Jensen's resignation as Randall's guardian and approved his final accounting. In the stipulation filed June 21, Jensen admitted the allegations of count VI.

## REFEREE'S REPORT

In addition to the facts recited above, the referee stated in his report that prior to the charges listed in this case, no other reprimands or charges had been filed against Jensen by the relator. The referee found that the complaints against Jensen involved primarily issues of neglect and poor office management and that there was no evidence in the record establishing that Jensen had misappropriated client funds or that any of Jensen's clients had lost any money as a result of Jensen's actions. Although there were allegations concerning the mismanagement of funds in the Randall guardianship matter, the referee determined that those issues had been resolved and that the county court had approved the final accounting in the case.

The referee further determined that Jensen has abstained from alcohol since June 1, 1999, and that he intended to continue to abstain from alcohol. In the referee's report, he stated that Jensen has made significant progress in the recovery from his alcoholism and that the prognosis for Jensen's further recovery is positive if Jensen continues on his plan for recovery.

## FINDINGS AND ASSESSMENT OF DISCIPLINE

With respect to counts I and II, we conclude that the facts clearly and convincingly establish that Jensen violated attorney disciplinary rules, neglected a legal matter entrusted to him, and

failed to deposit client funds into his attorney trust account, in violation of DR 1-102(A)(1), DR 6-101(A)(3), DR 9-102(A), and his oath of office as an attorney.

With respect to count III, we conclude the facts clearly and convincingly establish that Jensen violated attorney disciplinary rules, neglected a legal matter entrusted to him, failed to deposit client funds into his attorney trust account, and failed to deliver promptly to his client funds or other properties that were in his possession which the client was entitled to receive, in violation of DR 1-102(A)(1), DR 6-101(A)(3), DR 9-102(A) and (B)(4), and his oath of office as an attorney.

With respect to counts IV, V, and VI, we conclude that the facts clearly and convincingly establish that Jensen violated attorney disciplinary rules, neglected a legal matter entrusted to him, failed to deposit client funds into his attorney trust account, and failed to deliver promptly to his client funds or other properties that were in his possession which the client was entitled to receive, in violation of DR 1-102(A)(1), DR 6-101(A)(3), DR 9-102(A) and (B)(4), rule 16, and his oath of office as an attorney.

## DISCIPLINE

■■■ To determine whether and to what extent discipline should be imposed in an attorney proceeding, we consider the following factors: (1) the nature of the offense, (2) the need for deterring others, (3) the maintenance and reputation of the bar as a whole, (4) the protection of the public, (5) the attitude of the respondent generally, and (6) the respondent's present or future fitness to continue in the practice of law. *State ex rel. NSBA v. Pullen, ante* p. 125, 615 N.W.2d 474 (2000); *State ex rel. NSBA v. Aupperle,* 256 Neb. 953, 594 N.W.2d 602 (1999). Each case must be evaluated individually in light of its particular facts and circumstances. *Id.* For the purpose of determining the proper discipline, we consider the respondent's acts both underlying the events of the case and throughout the disciplinary proceeding. *Id.*

Jensen has admitted his misconduct and acknowledged responsibility for his actions. These actions

[reflect] positively upon his attitude and character and [are] a factor which we consider in determining the appropriate discipline, bearing in mind that the purpose of a dis-

ciplinary proceeding against an attorney is not so much to punish the attorney as it is to determine whether in the public interest an attorney should be permitted to practice. See *State ex rel. NSBA v. Aupperle*, 256 Neb. at 963, 594 N.W.2d at 608. See, also, *State ex rel. NSBA v. Pullen, supra*; *State ex rel. NSBA v. Barnett*, 248 Neb. 601, 537 N.W.2d 633 (1995).

Jensen has admitted his addiction to alcohol and believes the disease of alcoholism is the primary cause for his misconduct in violation of the disciplinary rules. The record reflects that Jensen has satisfactorily completed a treatment program for alcoholism and that Jensen has remained sober since completing the treatment program.

Mitigating circumstances shown in the record are considered in determining the appropriate discipline imposed on an attorney for violating the Code of Professional Responsibility. *State ex rel. NSBA v. Aupperle, supra*; *State ex rel. NSBA v. Gleason*, 248 Neb. 1003, 540 N.W.2d 359 (1995). We have recognized that "while substance abuse in no way justifies or excuses attorney misconduct, the facts that an attorney has acknowledged the condition, voluntarily sought treatment, and terminated use of the substance may under some circumstances be considered as mitigating factors in a disciplinary proceeding." *State ex rel. NSBA v. Pullen, ante* at 132, 615 N.W.2d at 479. Whether such facts warrant the mitigation of discipline in any particular case depends upon the particular facts and circumstances of the attorney's misconduct. *State ex rel. NSBA v. Pullen, supra*; *State ex rel. NSBA v. Aupperle, supra*.

The propriety of a sanction must be considered with reference to the sanctions imposed by this court in prior cases presenting similar circumstances. See *State ex rel. NSBA v. Freese*, 259 Neb. 530, 611 N.W.2d 80 (2000). In *State ex rel. NSBA v. Aupperle, supra*, six disciplinary counts were filed against the attorney, each of which alleged he had neglected his clients' cases. Aupperle cooperated with the Counsel for Discipline and admitted the allegations against him. He raised his alcoholism as a mitigating factor and showed evidence that he was addressing his alcohol addiction. This court indefinitely suspended Aupperle's license to practice law for a minimum of 2 years, retroactive to the date of Aupperle's temporary suspension, and

provided that he could regain his license upon showing his future fitness to practice law.

In *State ex rel. NSBA v. Pullen, ante* p. 125, 615 N.W.2d 474 (2000), Pullen admitted the two disciplinary counts which were filed against him. He admitted that he had misled his clients with regard to the status of litigation, neglected legal matters entrusted to him, and failed to handle client property appropriately. Furthermore, Pullen had entered into an agreement with the NLAP's monitoring program. We suspended Pullen's license to practice law for an indefinite period, with no possibility of reinstatement prior to 18 months from the date of the filing of the opinion. We also required Pullen to comply with the terms of his NLAP monitoring contract.

The referee in the instant case has recommended that Jensen receive a sanction similar to those imposed in the *Aupperle* and *Pullen* cases. The Assistant Counsel for Discipline agrees that such a sanction would be appropriate in this case.

Prior to the filing of the instant case, Jensen had no prior history of disciplinary violations. Jensen appears to have made sincere and productive efforts to confront his alcoholism and obtain the necessary professional treatment. We agree with the recommendations of the referee and the Assistant Counsel for Discipline that a sanction similar to those imposed in the *Aupperle* and *Pullen* cases is appropriate in the instant case.

Accordingly, we hereby grant the motion under rule 10(L) and suspend Jensen from the practice of law in the State of Nebraska for an indefinite period retroactive to the date of his temporary suspension on September 15, 1999, with no possibility of reinstatement prior to September 15, 2001. Upon application for reinstatement, Jensen shall have the burden of proving that he has not practiced law during the period of suspension, that he has met the requirements of rule 16, and that he is fit to practice law. In addition, reinstatement shall be conditioned upon (1) the payment of all costs of this action, which are hereby taxed to Jensen; (2) Jensen's compliance with the terms of his contract with the NLAP monitoring program; (3) a showing by independent third-party proof that Jensen has continued active participation in a recovery program and has maintained abstinence from the use of alcohol during the period of suspen-

sion; and (4) the submission by Jensen and approval by this court of a probation plan, to be in effect for a period of 2 years following reinstatement, whereby Jensen's recovery program and his compliance with the Code of Professional Responsibility would be monitored by the NLAP and the Counsel for Discipline. Failure to comply with the terms of the probation plan would constitute grounds for further disciplinary action. See *State ex rel. NSBA v. Barnett*, 248 Neb. 601, 537 N.W.2d 633 (1995).

JUDGMENT OF SUSPENSION.