STATE OF NEBRASKA EX REL. COUNSEL FOR DISCIPLINE
OF THE NEBRASKA SUPREME COURT, RELATOR,
V. WILLIAM P. JONES, RESPONDENT.

704 N.W.2d 216

Filed October 7, 2005.    Nos. S-04-619, S-04-963, S-04-1461.

Kent L. Frobish, Assistant Counsel for Discipline, for relator.

William P. Jones, pro se.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, and MILLER-LERMAN, JJ.

PER CURIAM.

## I. INTRODUCTION

The office of the Counsel for Discipline of the Nebraska Supreme Court, relator, filed formal charges against respondent, William P. Jones. Respondent failed to answer, and on June 16, 2004, this court suspended respondent from the practice of law. We now consider relator's motion for judgment on the pleadings and the appropriate discipline to be imposed upon respondent.

## II. FACTS

### 1. BACKGROUND

Respondent was admitted to the practice of law in the State of Nebraska on September 18, 1989. In previous disciplinary proceedings, respondent received a private reprimand on November 22, 1999, for neglecting a client's case and a second private reprimand on June 24, 2003, for aiding the unauthorized practice of law.

### 2. No. S-04-619: TEMPORARY SUSPENSION

On January 14, 2004, a bank notified relator that respondent's trust account was overdrawn by $168.31. Relator sent a letter of inquiry, but respondent failed to provide a written explanation for the overdrawn trust account. When respondent did not answer a second request, relator filed a grievance. Respondent received notice of the grievance on March 12 instructing him to respond, but he did not do so.

On January 14, 2004, relator also received a grievance letter from Rickey Bringus alleging that respondent failed to timely file a brief in Bringus' case before the Nebraska Court of Appeals. Relator sent respondent a copy of the grievance letter and instructed respondent to file a written response. A second letter was sent, but respondent still did not reply. Relator filed another

grievance and sent notice to respondent, directing him to file a written response within 15 days. Respondent did not answer.

Relator arranged to take a deposition of respondent on April 27, 2004, and served a subpoena duces tecum on him. Respondent said he would send the requested trust account documents prior to the deposition. Respondent also stated that he was under a psychiatrist's care for depression and attention deficit and that he would send a letter from his doctor. Respondent sent neither the trust account documents nor the doctor's letter. Respondent failed to attend the scheduled deposition, allegedly because his truck would not make it from Omaha to Lincoln. Relator told respondent to send the requested documents by courier, but respondent failed to do so.

On May 19, 2004, the chairperson of the Committee on Inquiry of the Second Disciplinary District filed an application asking this court to temporarily suspend respondent from the practice of law. We issued an order on May 26, instructing respondent to show cause within 7 days why this court should not temporarily suspend his license to practice law in Nebraska. Respondent did not answer the order to show cause, and on June 16, we suspended his license and ordered him to comply with Neb. Ct. R. of Discipline 16 (rev. 2004) (suspended or disbarred attorney must notify clients, refund client funds and close trust accounts, and return membership card to Nebraska State Bar Association).

Because respondent failed to notify his clients of his suspension, this court appointed a trustee on September 15, 2004, to take inventory of respondent's files, to sequester client funds, and to take other actions necessary to protect the interests of respondent's clients. The trustee fielded requests from respondent's clients in search of their files, and the trustee notified respondent of these requests. It is unclear from the record whether respondent failed to reply to all his clients' inquiries, but the trustee reported that in one case, after he sent respondent a letter to inform respondent that a former client sought her file, that client again called the trustee and indicated that respondent had not contacted her at all.

The trustee reported that respondent's files were in "hapless shape," which made it difficult for the trustee to "tell whether

they were open, closed, or whatever." The trustee provided an inventory of respondent's cases to this court "to the extent they exist[ed]." Respondent kept the files in various boxes "with no visibly coherent organization."

During the existence of the trusteeship, the trustee noted that respondent would promise to take action (e.g., deliver file materials to the trustee) but then fail to follow through. In the trustee's final report, the trustee noted that respondent had assured the trustee he had no trust account funds in hand and that "[f]inally, he appears to be cooperative." On the other hand, the trustee also noted tasks respondent still had not completed.

### 3. No. S-04-963: FORMAL CHARGES

#### (a) Count I: Representation of Rickey Bringus

Respondent represented Bringus at a postconviction hearing in Lancaster County District Court in December 2002. Following the hearing, the court gave respondent 7 days to submit a written argument. After respondent failed to do so, Bringus' motion for postconviction relief was denied. Respondent continued to represent Bringus on appeal to the Court of Appeals. After the court had granted an extended brief date, respondent failed to file a brief on behalf of Bringus. Thus, Bringus was forced to file a brief pro se in February 2004 to preserve his appeal.

In Bringus' case before the Court of Appeals, respondent checked out the bill of exceptions and transcript but failed to timely return them despite repeated requests from the Attorney General's office and the office of the Clerk of the Supreme Court and Court of Appeals. A court order was served on respondent before he finally returned the documents to the clerk.

Respondent also represented Bringus in a Social Security matter in the U.S. District Court for the District of Nebraska. On August 1, 2003, the district court sent respondent notice that the case would be dismissed in 10 days for failure to prosecute unless respondent showed cause why the case should not be dismissed. Respondent failed to reply to the court's order, so Bringus' Social Security case was dismissed.

As to count I, relator alleges that respondent violated his oath of office as an attorney, Neb. Rev. Stat. § 7-104 (Reissue 1997), and the following provisions of the Code of Professional

Responsibility: Canon 1, DR 1-102(A)(1) (violation of disciplinary rule), DR 1-102(A)(5) (conduct prejudicial to administration of justice), and DR 1-102(A)(6) (conduct adversely reflecting on attorney's fitness to practice law), and Canon 6, DR 6-101(A)(3) (neglect of legal matter).

### (b) Count II: Overdrawn Trust Account

Respondent's trust account was overdrawn on January 6, 2004, by $40.31 and on January 8 by $168.31. Respondent failed to answer relator's initial inquiry. Relator filed a grievance, and respondent again failed to provide explanation for the overdrawn trust account.

As to count II, relator alleges that respondent violated his oath of office as an attorney; DR 1-102(A)(1); and Canon 9, DR 9-102(A) (proper maintenance of trust account).

### (c) Count III: Failure to Cooperate
### With Disciplinary Proceedings

Respondent failed to reply to any of relator's inquiries or the grievances regarding his representation of Bringus and the overdrawn trust account. Despite being served with a subpoena duces tecum, respondent failed to attend a deposition and did not send relator the documents which had been requested.

As to count III, relator charges respondent with violating his oath of office as an attorney; the disciplinary rules; and DR 1-102(A)(1), (5), and (6).

### 4. No. S-04-1461: Formal Charges

### (a) Count I: Representation of Raymond Baker

On August 24, 2004, Raymond Baker filed a grievance with relator. Baker claimed that respondent held funds belonging to him, that respondent had failed to respond to Baker's repeated attempts to contact respondent, that respondent did not return Baker's files and records, and that respondent failed to notify Baker that respondent's law license had been suspended in June 2004. Relator mailed a copy of Baker's grievance letter to respondent, but respondent failed to provide a written response.

As to count I, relator charges respondent with violating his oath of office as an attorney; Neb. Ct. R. of Discipline 9(E) (rev. 2001) (attorney must respond to grievance within 15 working

days); disciplinary rule 16; DR 1-102(A)(1), (5), and (6); DR 6-101(A)(3); and DR 9-102(A) and (B) (prompt notification of receipt of client funds, safekeeping of client property, maintenance of complete records of client property in attorney's possession, prompt delivery of funds or other property to client upon request).

(b) Count II: Representation of Debbie Sue Hecker

Debbie Sue Hecker filed a grievance against respondent on September 1, 2004. Hecker alleged that respondent neglected her case, failed to respond to repeated attempts by Hecker to talk to respondent, failed to return her files and records, and failed to notify her that his law license had been suspended in June 2004. Relator mailed a copy of Hecker's grievance letter to respondent with instructions for respondent to reply. Respondent did not do so.

As to count II, relator charges that respondent violated his oath of office as an attorney; disciplinary rules 9(E) and 16; DR 1-102(A)(1), (5), and (6); DR 6-101(A)(3); and DR 9-102(B)(4) (prompt delivery of funds or other property to client upon request).

(c) Count III: Representation of Charles Evans

Respondent represented Charles Evans in a suit in federal court. After losing the case in the district court, respondent filed a notice of appeal to the U.S. Court of Appeals for the Eighth Circuit, but he did not pay the necessary docket fee. Consequently, the Eighth Circuit sent to respondent an order to show cause why the appeal should not be dismissed for failure to prosecute. Respondent did not reply, and the appeal was dismissed on July 23, 2003. Even after the appeal had been dismissed, respondent told Evans that the appeal had been perfected and that he had filed a brief.

Evans filed a grievance with relator on August 18, 2004, alleging that respondent had neglected his case, lied to him about the status of the case, and failed to deliver to him his files and records. Relator mailed a copy of Evans' grievance letter to respondent and instructed respondent to provide a written response. Respondent made no reply.

As to count III, relator charges that respondent violated his oath of office as an attorney; disciplinary rules 9(E) and 16; DR 1-102(A)(1), (5), and (6); DR 1-102(A)(4) (conduct involving dishonesty, fraud, deceit, or misrepresentation); DR 6-101(A)(3); and DR 9-102(B)(4).

(d) Count IV: Representation of Candace Kohler

Respondent represented Candace Kohler in a case against her landlord. Kohler filed a grievance with relator on November 8, 2004, alleging that respondent had neglected her case. Respondent also failed to notify Kohler that his license was suspended and failed to return her file materials to her. Relator mailed a copy of Kohler's grievance letter to respondent and instructed him to provide a written response. Respondent made no reply.

As to count IV, relator charges that respondent violated his oath of office as an attorney; disciplinary rules 9(E) and 16; DR 1-102(A)(1), (5), and (6); DR 6-101(A)(3); and DR 9-102(B)(4).

(e) Count V: Representation of Richard Hendren

Respondent represented Richard Hendren in a case against an airline. Hendren filed a grievance with relator on November 29, 2004, alleging that respondent had neglected his case. Respondent also failed to notify Hendren that his license was suspended and failed to return Hendren's file materials to him. Relator mailed a copy of Hendren's grievance letter to respondent and instructed him to provide a written response. Respondent did not reply.

With regard to count V, relator charges that respondent violated his oath of office as an attorney; disciplinary rules 9(E) and 16; DR 1-102(A)(1), (5), and (6); DR 6-101(A)(3); and DR 9-102(B)(4).

### III. STANDARD OF REVIEW

A proceeding to discipline an attorney is a trial de novo on the record. *State ex rel. Counsel for Dis. v. Chapin, ante* p. 56, 699 N.W.2d 359 (2005).

## IV. ANALYSIS

■ The basic issues in a disciplinary proceeding against a lawyer are whether discipline should be imposed and, if so, the type of discipline appropriate under the circumstances. *State ex rel. Counsel for Dis. v. Widtfeldt*, 269 Neb. 289, 691 N.W.2d 531 (2005). To sustain a charge in a disciplinary proceeding against an attorney, a charge must be established by clear and convincing evidence. *Chapin, supra.*

### 1. MOTION FOR JUDGMENT ON PLEADINGS

■ An attorney against whom formal charges have been filed is subject to a judgment on the pleadings if he or she fails to answer those charges. See *State ex rel. Counsel for Dis. v. Lechner*, 266 Neb. 948, 670 N.W.2d 457 (2003). The disciplinary rules provide that if no answer is filed, "the matter may be disposed of by the Court on its own motion or on a motion for judgment on the pleadings" so long as an opportunity for oral argument is given before disbarment is ordered. Neb. Ct. R. of Discipline 10(I) (rev. 2005).

In this proceeding, respondent did not answer the charges filed against him or file any pleadings or briefs and relator has moved this court for a judgment on the pleadings. We determine that the requirements of rule 10(I) have been satisfied. Having reviewed the record de novo, we conclude that the allegations contained in the formal charges have been established by clear and convincing evidence and that the motion of relator for judgment on the pleadings should be and is hereby granted.

### 2. DETERMINATION OF APPROPRIATE SANCTION

■ Under Neb. Ct. R. of Discipline 4 (rev. 2004), this court may impose one or more of the following sanctions: (1) disbarment, (2) suspension, (3) probation in lieu of or subsequent to suspension, (4) censure and reprimand, or (5) temporary suspension. See *Chapin, supra.* To determine whether and to what extent discipline should be imposed in a lawyer discipline proceeding, this court considers the following factors: (1) the nature of the offense, (2) the need for deterring others, (3) the maintenance of the reputation of the bar as a whole, (4) the protection of the public, (5) the attitude of the respondent generally, and (6) the respondent's present or future fitness to continue in

the practice of law. *State ex rel. Counsel for Dis. v. Sutton*, 269 Neb. 640, 694 N.W.2d 647 (2005).

■ Each case justifying discipline of an attorney must be evaluated individually in light of the particular facts and circumstances of that case. *Id.* However, we also consider "the sanctions imposed by this court in prior cases presenting similar circumstances" in order to determine what the appropriate sanction is in this case. *State ex rel. Counsel for Dis. v. James*, 267 Neb. 186, 199, 673 N.W.2d 214, 226 (2004).

In many instances, lawyers facing similar allegations have been disbarred. In *State ex rel. Counsel for Dis. v. Rasmussen*, 266 Neb. 100, 662 N.W.2d 556 (2003), Scott Rasmussen neglected several clients and cases, mishandled client funds, and failed to cooperate with the Counsel for Discipline by not responding timely to inquiries and not appearing at a scheduled deposition. We concluded that Rasmussen violated his oath of office, DR 1-102(A)(1) and (5), DR 6-101(A)(3), and DR 9-102(A) and (B)(3) and (4).

We noted that some of Rasmussen's ethical violations, including paying himself a retainer before earning it, were of a type for which lawyers typically receive the most severe sanctions. "[M]isappropriation of a client's funds is more than a grievous breach of professional ethics. It violates basic notions of honesty and endangers public confidence in the legal profession." *Rasmussen*, 266 Neb. at 112, 662 N.W.2d at 565. If no mitigating circumstances are shown, the appropriate discipline in cases of misappropriation or commingling of client funds is disbarment. See *id.* Because no mitigating circumstances were present, this court ordered Rasmussen disbarred.

In *State ex rel. NSBA v. Gregory*, 251 Neb. 41, 554 N.W.2d 422 (1996), two complaints were filed by former clients who alleged that J. David Gregory continually neglected legal matters, failed to carry out a contract of employment for professional services, engaged in conduct involving dishonesty and misrepresentation, and misused client funds. Gregory lied to his clients by telling them that he had completed certain tasks when in fact he had not. Despite his clients' repeated requests, Gregory failed to return documents to them. Gregory neither responded to the complaints nor attended a hearing of the Committee on Inquiry.

We declared that we would not tolerate "such neglectful and uncooperative practices," *id.* at 44, 554 N.W.2d at 424, and noted that misappropriation of client funds typically warrants disbarment. Consequently, we disbarred Gregory. See, also, *State ex rel. NSBA v. Howze,* 260 Neb. 547, 618 N.W.2d 663 (2000) (disbarment ordered where lawyer failed to maintain sufficient funds in trust account and did not provide any explanation to Counsel for Discipline upon request, and where court found no evidence of mitigating circumstances).

■■■ We take the alleged trust account violations very seriously because "[a]n attorney bears the responsibility to accurately account for his client's funds." See *State ex rel. Counsel for Dis. v. Gilroy, ante* p. 339, 344, 701 N.W.2d 837, 841 (2005). Misappropriation of client funds is one of the most serious violations of duty an attorney owes to clients, the public, and the courts, and typically warrants disbarment. *Gregory, supra; State ex rel. NSBA v. Veith,* 238 Neb. 239, 470 N.W.2d 549 (1991). In the context of attorney discipline proceedings, misappropriation is any unauthorized use of client funds entrusted to an attorney, including not only stealing, but also unauthorized temporary use for the attorney's own purpose, whether or not the attorney derives any personal gain or benefit therefrom. *State ex rel. Counsel for Dis. v. Wintroub,* 267 Neb. 872, 678 N.W.2d 103 (2004).

This court has on occasion imposed lengthy suspensions instead of disbarment. In *State ex rel. NSBA v. Jensen,* 260 Neb. 803, 619 N.W.2d 840 (2000), we suspended W. Mark Jensen indefinitely with no possibility of reinstatement for 2 years, at which time he would be required to submit to a 2-year probationary period and to comply with several reinstatement conditions. Jensen neglected clients and cases, failed to deposit client funds into his trust account, and failed to deliver promptly to his clients their funds or other property in his possession.

In determining the appropriate disciplinary measure, we considered how Jensen acted both in the underlying events of the case and in the disciplinary proceedings. He admitted his misconduct and took responsibility for his actions. He made "sincere and productive efforts to confront" an alcohol problem, satisfactorily completed an alcohol treatment program, and remained sober thereafter. *Id.* at 814, 619 N.W.2d at 848. He also

had no prior history of disciplinary violations. We ordered a sanction less than disbarment because these mitigating circumstances were present.

In *State ex rel. NSBA v. Pullen*, 260 Neb. 125, 615 N.W.2d 474 (2000), we ordered an indefinite suspension (for at least 18 months) with a conditional reinstatement where Daniel Pullen's misconduct constituted many of the same violations as those alleged against respondent. Pullen neglected legal matters entrusted to him, lied to a client about a motion he had not filed, agreed to a child custody modification without his client's consent, failed to return file materials to a client despite the client's repeated requests, and mishandled his trust account. In determining the appropriate sanction, we considered the following mitigating circumstances: Pullen "readily admitted his misconduct[,] acknowledged responsibility for his actions [and] acknowledged that his violations ha[d] harmed the public." *Id.* at 132, 615 N.W.2d at 479. Those acknowledgments reflected positively upon his attitude and character. *Id.* Pullen also admitted he was addicted to alcohol and satisfactorily completed an alcohol treatment program. Furthermore, Pullen's violations occurred during a 1-year period, and he had no prior history of disciplinary violations.

█ The determination of an appropriate penalty to be imposed on an attorney in a disciplinary proceeding requires consideration of any aggravating or mitigating factors. *State ex rel. Counsel for Dis. v. Sutton*, 269 Neb. 640, 694 N.W.2d 647 (2005). In the present case, respondent's misconduct does not arise from an isolated event, but from a longstanding pattern of ethical violations. The record reflects several aggravating factors, but no mitigating factors.

(a) Aggravating Factors

█ To analyze the aggravating factors in this case, we begin by noting both the quantity and the nature of respondent's alleged violations. The formal charges in these cases, which have been consolidated for argument and disposition, contain eight counts against respondent. Cumulative acts of attorney misconduct are distinguishable from isolated incidents of neglect, therefore justifying more serious sanctions. *State ex rel. NSBA v. Freese*, 259

Neb. 530, 611 N.W.2d 80 (2000); *State ex rel. NSBA v. Mefferd*, 258 Neb. 616, 604 N.W.2d 839 (2000). Respondent has exhibited a pattern of neglecting his clients and their cases. This neglect has harmed his clients.

■■■ Next, respondent's lack of cooperation during these disciplinary proceedings is an aggravating circumstance that must be considered. For purposes of determining the proper discipline, this court considers respondent's acts both underlying the events of this case and throughout the proceeding. *State ex rel. Counsel for Dis. v. Gilroy, ante* p. 339, 701 N.W.2d 837 (2005). Respondent failed to provide relator with an explanation concerning any of the grievances lodged against him. We have repeatedly emphasized how important it is for an attorney to respond to inquiries and requests for information from the Counsel for Discipline. Responding to disciplinary complaints in an untimely manner and repeatedly ignoring requests for information indicate disrespect for this court's disciplinary jurisdiction and a lack of concern for the protection of the public, the profession, and the administration of justice. See, *id.*; *Sutton, supra*.

Although respondent met with the appointed trustee to inventory his cases and returned some file materials to clients after he was temporarily suspended, he made no effort to cooperate during these disciplinary proceedings. Respondent failed to answer the formal charges, and he did not file a brief in this court.

■■■ Upon being temporarily suspended by this court in June 2004, respondent did not properly notify his clients of the suspension or return their file materials to them as required of suspended attorneys by disciplinary rule 16. As a result, this court appointed a trustee to inventory respondent's cases. Failure to comply with rule 16 places one in contempt of court and constitutes an aggravating circumstance. *State ex rel. NSBA v. Mahlin*, 252 Neb. 985, 568 N.W.2d 214 (1997); *State ex rel. NSBA v. Brown*, 251 Neb. 815, 560 N.W.2d 123 (1997).

Finally, this is not the first time that respondent has been disciplined. Respondent received a private reprimand on November 22, 1999, for neglecting a client's case, and he received a second private reprimand on June 24, 2003, for aiding the unauthorized practice of law. Thus, we have not been presented with merely a

single instance of unprofessional, unethical, and neglectful conduct, but several. This court cannot "overlook that lesser punishment in the form of private reprimands" has not changed respondent's behavior or that "his failure to have complied with Neb. Ct. R. of Discipline 16 . . . on this occasion makes him currently in contempt of this court." See *State ex rel. NSBA v. Johnston*, 251 Neb. 468, 473, 558 N.W.2d 53, 57 (1997) (holding that attorney's misconduct involving failure to make filings, attend hearing, and communicate with client, and failure to make timely responses to inquiries by Counsel for Discipline warranted disbarment).

### (b) Mitigating Factors

Absent mitigating circumstances, the appropriate discipline in cases of misappropriation or commingling of client funds is typically disbarment. *State ex rel. Counsel for Dis. v. Gilroy, ante* p. 339, 701 N.W.2d 837 (2005). In *Gilroy*, the attorney violated several disciplinary rules, trust account rules, and his oath of office. He failed to respond to inquiries by the Counsel for Discipline, answer the formal charges, or file any other pleadings, and this court disbarred him. We noted that because the attorney failed to reply to the Counsel for Discipline or file any pleadings, we had no basis for considering any factors that mitigated in his favor.

In the case at bar, respondent failed to provide any explanation to relator for his actions or to answer the charges levied against him. Therefore, we cannot point to any circumstances which this court might consider to be mitigating.

### V. CONCLUSION

Clear and convincing evidence establishes that respondent neglected many of his clients' cases, deceived a client, mishandled and overdrew his trust account, failed to return requested materials to clients, and failed to comply with the disciplinary rules by not responding to inquiries by relator and not informing his clients that he was temporarily suspended in June 2004. Respondent violated DR 1-102(A)(1), (4), (5), and (6); DR 6-101(A)(3); DR 9-102(A) and (B); disciplinary rules 9(E) and 16; and his oath of office as an attorney. For the reasons set forth, we conclude that disbarment is the appropriate sanction.

It is therefore the judgment of this court that respondent be disbarred from the practice of law in the State of Nebraska, effective immediately. Respondent is directed to comply with disciplinary rule 16, and upon failure to do so, respondent shall be subject to punishment for contempt of this court. Respondent is directed to pay costs and expenses in accordance with Neb. Rev. Stat. §§ 7-114 and 7-115 (Reissue 1997), disciplinary rule 10(P), and Neb. Ct. R. of Discipline 23 (rev. 2001) within 60 days after an order imposing costs and expenses has been entered by this court.

JUDGMENT OF DISBARMENT.

McCORMACK, J., not participating.