Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/30/2018 08:11 AM CST

- 661 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
301 NEBRASKA REPORTS
STATE EX REL. COUNSEL FOR DIS. v. PERSON
Cite as 301 Neb. 661

STATE OF NEBRASKA EX REL. COUNSEL FOR DISCIPLINE
OF THE NEBRASKA SUPREME COURT, relator,
v. KENT E. PERSON, RESPONDENT.
___ N.W.2d ___

Filed November 30, 2018.    No. S-17-556.

1. **Disciplinary Proceedings.** Attorney discipline cases are original proceedings before the Nebraska Supreme Court, and the court reviews a referee's recommendations de novo on the record, reaching a conclusion independent of the referee's findings.

2. ____. The basic issues in a disciplinary proceeding against an attorney are whether the Nebraska Supreme Court should impose discipline and, if so, the appropriate discipline under the circumstances.

3. ____. The goal in disciplining attorneys in attorney discipline proceedings is not as much punishment as it is a determination of whether it is in the public interest to allow an attorney to keep practicing law.

4. ____. The determination of an appropriate penalty to be imposed on an attorney in a disciplinary proceeding requires consideration of any aggravating or mitigating factors.

5. ____. The Nebraska Supreme Court considers the following factors in determining whether and to what extent discipline should be imposed: (1) the nature of the offense, (2) the need for deterring others, (3) the maintenance of the reputation of the bar as a whole, (4) the protection of the public, (5) the attitude of the offender generally, and (6) the offender's present and future fitness to continue in the practice of law.

Original action. Judgment of suspension.

John W. Steele, Assistant Counsel for Discipline, for relator.

Kent E. Person, pro se.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Per Curiam.

## INTRODUCTION

The Counsel for Discipline of the Nebraska Supreme Court filed formal charges against Kent E. Person, alleging ethical violations. At the hearing before the referee, Person, a Nebraska licensed attorney, admitted to violating his oath of office as an attorney, as well as Neb. Ct. R. of Prof. Cond. §§ 3-501.1 (competence), 3-501.3 (diligence), 3-501.4 (communications), 3-503.3 (candor toward tribunal), and 3-508.4 (misconduct). We order an indefinite suspension from the practice of law for a minimum of 2 years, followed by a 2-year period of probation.

## BACKGROUND

Person was admitted to the practice of law in the State of Nebraska on June 24, 1968. Person began practicing as an attorney in 1970, working with his father in Holdrege, Nebraska.

Person was retained by complainant to administer the estate of complainant's mother following her passing on November 16, 2007. The following timeline is placed against the backdrop of repeated, and rarely answered, communications by complainant over the 8 years that Person was purporting to administer the estate of complainant's mother.

On January 22, 2008, Person opened the estate informally in Phelps County Court, at which time, complainant was appointed as the estate's personal representative. After no further action had taken place with regard to the estate, on June 3, the clerk magistrate sent Person a notification reminding him that the estate inventory had been due on April 22. Person filed the initial inventory on December 1, over 7 months after the statutorily mandated filing date.

In connection with meeting federal tax reporting requirements, Person contacted complainant on November 25, 2008,

- 663 -

Nebraska Supreme Court Advance Sheets
301 Nebraska Reports
STATE EX REL. COUNSEL FOR DIS. v. PERSON
Cite as 301 Neb. 661

to request that he come to Person's office to sign the "Federal Estate Tax Return, Form 706." After complainant signed the form, Person told complainant that he, Person, would file the form. Person ultimately failed to do so. Person withheld from complainant that the form should have been filed within 9 months of complainant's mother's death, a deadline that had passed over 3 months earlier. Person further withheld information regarding penalties and interest that would result from the missed deadline.

As a result of the case's being open in excess of 18 months, the clerk magistrate sent a notification to Person requesting that a "'status letter'" be filed with the court by August 15, 2009. After Person failed to file the ordered status letter, the clerk magistrate issued a show cause order to Person, setting the matter for hearing on October 19. The result of the hearing is not clear from the record. On April 6, 2010, the clerk magistrate sent another communication to Person, seeking a report on the status of the estate. Receiving no reply or status letter, the clerk magistrate issued a second show cause order on May 19 to determine the reason for the lack of movement with regard to the estate and set the matter for hearing.

On June 7, 2010, Person filed a status letter with the Phelps County Court, advising that a determination of the estate's assets had been difficult due to title discrepancies. Person indicated that "[w]e have prepared and filed a Federal Estate Tax Return in this estate." Person went on to state that "[w]e will be filing an Inventory with this estate within thirty (30) days and will proceed to file the Inventory within thirty (30) days with the Internal Revenue Service on *the 706 that has been filed* and the remaining papers within thirty (30) days." (Emphasis supplied.) The federal estate tax form had not been filed at the time Person made this statement.

Having again not heard from Person or any representative of the estate, the clerk magistrate sent a letter on January 13, 2011, indicating that a status update on the case was required. Person again failed to respond or file a status update. On May

13, the clerk magistrate issued a third order to show cause, setting the matter for hearing on June 6. The result of the scheduled June 6 hearing is not clear from the record; however, on June 7, Person filed an amended inventory.

With the estate still open and no further action occurring following the June 7, 2011, filing, on January 10, 2012, the clerk magistrate issued a fourth order to show cause and set the matter for a hearing on February 8. Person failed to appear at that hearing. With no further action occurring in regard to the estate, on September 17, the clerk magistrate issued a fifth order to show cause, setting the matter for hearing on October 1. The record is unclear as to the result of the September 17 order; however, the clerk magistrate sent a sixth order to show cause on November 30, setting a hearing for December 17.

On December 14, 2012, complainant signed a petition for determination of inheritance tax and maintained that until that date, he was not aware he was required to pay an inheritance tax. At the hearing on December 17, Person reportedly indicated that he would be closing the estate by the end of the year.

On April 25, 2013, Person filed an amended inventory, a petition for determination of inheritance tax, and an inheritance tax worksheet. The petition for determination of inheritance tax contains the following: "The Inheritance Tax Worksheet states the clear market value of all assets of the Decedent, the *proper deductions* and the correct computation of the Nebraska Inheritance Tax, which should be determined and assessed as stated therein, and the Worksheet is incorporated by this reference." (Emphasis supplied.) The inheritance tax worksheet referenced shows a deduction of $55,415 for attorney fees. During the hearing regarding discipline, the referee questioned Person about the attorney fees, to which Person responded that he had not received any payment. In response to further questioning, Person indicated that the amount listed on the worksheet was the agreed-upon fee for Person's services; however, Person further indicated that he

- 665 -

Nebraska Supreme Court Advance Sheets
301 Nebraska Reports
STATE EX REL. COUNSEL FOR DIS. v. PERSON
Cite as 301 Neb. 661

had never charged complainant and that he felt he had not earned the fees.

In addition to the misrepresentations that Person had made to the probate judge stating that he had filed the tax form, the referee concluded that Person made a false statement in the petition for determination of inheritance tax and on the inheritance tax worksheet he filed with the court, because a deduction for attorney fees had been claimed but never paid by the estate.

On April 25, 2013, an order assessing the inheritance tax was filed. However, Person had not informed complainant that the state inheritance tax was past due and was accruing interest and penalties according to Neb. Rev. Stat. § 77-2010 (Reissue 2009). Under § 77-2010, interest will accrue at a rate set by the Legislature under Neb. Rev. Stat. § 45-104.01 (Reissue 2010), which was 14 percent. Additionally, according to § 77-2010, a consequence for not filing the appropriate proceeding to determine estate taxes within 12 months carries between "five percent per month or fraction thereof, up to a maximum penalty of twenty-five percent of the unpaid taxes due." As a result of Person's failing to adequately administer the estate or communicate with complainant, state taxes, including accumulated interest and penalties, totaled $36,052.48. The record demonstrates that complainant paid the tax, including interest and penalties. However, it is unclear from the record whether Person has fully reimbursed complainant.

Three additional show cause orders requiring Person's appearance in court were issued on November 20, 2013; July 11, 2014; and January 6, 2015. The January 6 order compelled Person to appear on February 11. Upon Person's failure to appear at the scheduled hearing, the probate court appointed a separate attorney as special administrator for the estate.

The special administrator worked with complainant to wrap up the affairs of the estate. During the course of its work, the special administrator learned that the required tax form

- 666 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
301 NEBRASKA REPORTS
STATE EX REL. COUNSEL FOR DIS. v. PERSON
Cite as 301 Neb. 661

had been completed but not filed. The special administrator also retained a tax attorney to resolve issues with the Internal Revenue Service (IRS). Despite the efforts of the tax attorney, who sought to abate the IRS penalties and interest in excess of the $800,000 owed, the IRS refused to accommodate any abatement. As a result, the total amount due to the IRS totaled $1,090,077.58 in interest and penalties.

The complaint made by complainant was forwarded to the Committee on Inquiry of the Sixth Judicial District on May 13, 2017, and a disciplinary hearing was held on November 8. After the hearing, the referee found that Person had violated §§ 3-501.1; 3-501.3; 3-501.4(a)(1) through (4) and (b); 3-503.3(a); and 3-508.4(a), (c), and (d) of the Nebraska Rules of Professional Conduct. The referee weighed a number of considerations and determined that the appropriate discipline was to consist of a 30-day suspension, with reinstatement after the 30 days conditioned upon proof that Person had fully reimbursed the estate all interest and penalties paid by the estate to state and federal taxing authorities. The 30-day suspension was to be followed by a 1-year period of probation, during which Person would be required to engage an attorney, licensed to practice law in the State of Nebraska and approved by the Counsel for Discipline, to act as a practice monitor during Person's probationary period.

In addition to the suspension and probationary period, the referee recommended that upon Person's application for reinstatement, such reinstatement was to be conditioned upon his producing evidence that he is fit to practice law and has not had any additional disciplinary matters arise during his suspension. Further, the referee recommended that Person be required to comply with Neb. Ct. R. § 3-316 (rev. 2014), and be required to pay costs and expenses in accordance with Neb. Rev. Stat. §§ 7-114 and 7-115 (Reissue 2012) and Neb. Ct. R. §§ 3-310(P) (rev. 2014) and 3-323(B), within 60 days after any order imposing costs and expenses ordered by the court.

## STANDARD OF REVIEW

[1] Attorney discipline cases are original proceedings before this court, and we review a referee's recommendations de novo on the record, reaching a conclusion independent of the referee's findings.[1]

## ANALYSIS

[2-4] The basic issues in a disciplinary proceeding against an attorney are whether the Nebraska Supreme Court should impose discipline and, if so, the appropriate discipline under the circumstances.[2] The goal in disciplining attorneys in attorney discipline proceedings is not as much punishment as it is a determination of whether it is in the public interest to allow an attorney to keep practicing law.[3] With that in mind, the determination of an appropriate penalty to be imposed on an attorney in a disciplinary proceeding requires consideration of any aggravating or mitigating factors.[4]

[5] This court considers the following factors in determining whether and to what extent discipline should be imposed: (1) the nature of the offense, (2) the need for deterring others, (3) the maintenance of the reputation of the bar as a whole, (4) the protection of the public, (5) the attitude of the offender generally, and (6) the offender's present and future fitness to continue in the practice of law.[5]

Person admits that in this case, he violated the following Nebraska Rules of Professional Conduct: §§ 3-501.1 (competence); 3-501.3 (diligence); 3-501.4(a)(1) through (4) and

---

[1] See *State ex rel. Counsel for Dis. v. Trembly*, 300 Neb. 195, 912 N.W.2d 764 (2018).

[2] *State ex rel. Counsel for Dis. v. Cording*, 285 Neb. 146, 825 N.W.2d 792 (2013).

[3] *Trembly, supra* note 1.

[4] *State ex rel. Counsel for Dis. v. Jones*, 270 Neb. 471, 704 N.W.2d 216 (2005).

[5] See *Trembly, supra* note 1.

- 668 -

Nebraska Supreme Court Advance Sheets
301 Nebraska Reports
STATE EX REL. COUNSEL FOR DIS. v. PERSON
Cite as 301 Neb. 661

(b) (communication); 3-503.3(a) (candor toward tribunal); and 3-508.4(a), (c), and (d) (misconduct). Person argues on appeal that because the violations affected only one client and were mitigated by other factors, at most a brief suspension was appropriate. Relator agreed with the referee that a 30-day suspension, followed by reinstatement conditioned on proof that Person had fully reimbursed the estate and a 1-year period of probation following that reinstatement, was appropriate.

In *State ex rel. Counsel for Dis. v. Fraizer*,[6] the formal charges consisted of one count against Theodore Fraizer, alleging that he failed to make a timely distribution of the assets remaining in the trust. In that case, the decedent died on May 3, 2006, and Fraizer filed the estate proceeding on May 12. In May 2009, the estate was closed, with the remaining assets being transferred to a trust for which Fraizer became trustee in 2013. The beneficiaries subsequently filed a complaint with the Counsel for Discipline alleging that Fraizer failed to make timely distribution of the assets remaining in the trust. Fraizer ultimately completed all matters related to the estate and trust, further agreeing to be responsible for any interest or penalties. Fraizer filed a conditional admission admitting that he violated his oath of office as an attorney and professional conduct rules §§ 3-501.3 and 3-508.4(a). Fraizer's violations and voluntary admission resulted in a public reprimand.

In *State ex rel. Counsel for Dis. v. Holthaus*,[7] the formal charges alleged that Roger Holthaus had neglected his responsibilities while acting as the attorney for the personal representative of a probate estate. It was alleged that Holthaus neglected his responsibilities by not timely filing pleadings in the probate case, not filing tax returns, not communicating

---

[6] *State ex rel. Counsel for Dis. v. Fraizer*, 297 Neb. 496, 899 N.W.2d 912 (2017).

[7] *State ex rel. Counsel for Dis. v. Holthaus*, 268 Neb. 313, 686 N.W.2d 570 (2004).

with the residual beneficiary, and mishandling estate assets. The residual beneficiary filed a petition to surcharge the personal representative and Holthaus, which resulted in a judgment against Holthaus. Subsequently, Holthaus filed a conditional admission in which he did not contest the truth of the allegations and further waived all proceedings against him in favor of a 6-month suspension of his license.

In *State ex rel. Counsel for Dis. v. Ubbinga*,[8] we suspended Lori Anne Ubbinga for 1 year upon finding that she failed to complete the work for which she was retained, failed to communicate with her client regarding the status of her work, failed to provide an accounting when asked, and failed to cooperate with relator's investigation. In that case, Ubbinga agreed to represent a client regarding child visitation. During the course of the representation, she failed to file motions with the court and did not adequately communicate with the client. Upon the client's filing a complaint, Ubbinga failed to fully cooperate with relator and made false statements to relator. In that case, we noted that Ubbinga did not take responsibility for her actions and that her dishonest conduct raised questions as to her fitness to practice law.

The record shows that during the course of Person's representation of the estate, he repeatedly failed to see that the estate was properly administered. The clerk magistrate sent numerous letters requesting a status update, which were largely ignored by Person. Following Person's disregard of requests for status updates, the clerk magistrate issued multiple orders to show cause, which were also largely ignored by Person. Complainant made several attempts to communicate with Person, which he either ignored the attempts or provided little information in the way of legal counsel.

Moreover, Person misled the court by stating that he had filed the required tax form, when in fact he had taken no

---

[8] *State ex rel. Counsel for Dis. v. Ubbinga*, 295 Neb. 995, 893 N.W.2d 694 (2017).

- 670 -

Nebraska Supreme Court Advance Sheets
301 Nebraska Reports
STATE EX REL. COUNSEL FOR DIS. v. PERSON
Cite as 301 Neb. 661

such action. He later made a false statement in the petition for determination of inheritance tax and on the inheritance tax worksheet that he subsequently filed with the court. As a result of Person's failure to competently administer the estate, it accumulated $1,090,077.58 in interest and penalties alone to the IRS, and $36,052.48 in interest and penalties to the state and county, a loss totaling $1,126,130.06.

We note that Person had been practicing law for approximately 48 years when he took on representation of complainant and that he had been subject to only one prior complaint, for which he was reprimanded. The length of Person's career and the lack of substantial prior disciplinary history should be considered as a mitigating factor in this case, as it demonstrates that this is not a pattern of behavior throughout Person's career. Person also maintains a good reputation in the community, and complainant has commented, without solicitation, that Person is "an honest individual. He is civic-minded and has made several contributions to better our life in Holdrege."

Person has indicated that he suffers from depression. Person indicated that due to a severe motor vehicle accident, the loss of his father in 2007, and his brother's retiring from the practice of law, he was left without a support system. Person claims this resulted in his becoming overburdened, though he did not recognize it at the time. However, the record contains no medical evidence that the injuries Person received in his accident were direct and substantial contributing factors for his conduct. As such, the referee discounted those claims.

Moreover, Person's lack of a support system in which to seek professional assistance and counsel with regard to decisionmaking is a cause for concern. This need for support, and accompanying lack of support, lead to the unavoidable concern for the protection of the public.

Person has not only been cooperative with the Counsel for Discipline, but has demonstrated remorse and admitted that he mishandled his representation in this case. Further, Person has

- 671 -

Nebraska Supreme Court Advance Sheets
301 Nebraska Reports
STATE EX REL. COUNSEL FOR DIS. v. PERSON
Cite as 301 Neb. 661

indicated that he intends to reimburse his client for the loss he caused. These factors weigh in favor of Person. However, as the referee correctly noted, we cannot allow members of the bar to buy their way out of disciplinary sanctions or give the public the impression that we would permit such actions.

## CONCLUSION

Based on the repeated acts of indifference to the clerk magistrate's communications and orders, as well as Person's indifference to his responsibility to communicate with his client and his duty as an officer of the court to communicate honestly with the tribunal, we find that the appropriate sanction is an indefinite suspension from the practice of law for a minimum of 2 years, followed by a 2-year period of probation. At the completion of Person's suspension, he must apply for reinstatement. Such reinstatement should be conditioned on Person's producing evidence that he has fully reimbursed the estate, in addition to showing that he is fit to practice law and has not had any additional disciplinary matters arise during his suspension.

Upon reinstatement, Person shall comply with the following terms of monitored probation. The monitoring shall be by an attorney licensed to practice law in the State of Nebraska and approved by the Counsel for Discipline. Person shall submit a monitoring plan with his application for reinstatement, which shall include but not be limited to the following: During the first 6 months of probation, Person shall meet with and provide the monitor a weekly list of cases for which Person is responsible. The list shall include the date the attorney-client relationship began; the general type of case; the date of last contact with the client; the last type and date of work completed on the file (pleading, correspondence, document preparation, discovery, or court hearing); the next type of work and date that work should be completed on the case; any applicable statutes of limitations and their dates; and the financial terms of the relationship (hourly, contingency, et cetera).

- 672 -

Nebraska Supreme Court Advance Sheets
301 Nebraska Reports
STATE EX REL. COUNSEL FOR DIS. v. PERSON
Cite as 301 Neb. 661

After the first 6 months through the end of his probation, Person shall meet with the monitor on a monthly basis and provide the monitor with a list containing the same information as set forth above. Person shall work with the monitor to develop and implement appropriate office procedures to ensure protection of the clients' interests. Person shall reconcile his trust account within 10 working days of receipt of the monthly bank statement and provide the monitor with a copy within 5 working days.

Person shall submit a quarterly compliance report to the Counsel for Discipline, demonstrating adherence to the foregoing terms of probation. The quarterly report shall include a certification by the monitor that the monitor has reviewed the report and that Person continues to abide by the terms of probation. If at any time the monitor believes Person has violated the rules of professional conduct or has failed to comply with the terms of probation, the monitor shall report the same to the Counsel for Discipline. Person shall pay all of the costs in this case, including the fees and expenses of the monitor, if any.

Judgment of suspension.